*D. R. Carr, for appellant.*

*P. W. Hardin, for appellee.*

---

SAMUEL ASHLOCK *v.* ALEX. SAYERS.

[Abstract Kentucky Law Reporter, Vol. 7—218.]

**Grantee's Title Not Better Than His Grantor's.**

Where a grantor has neither title nor possession of land his conveyance thereof secures to his grantee no better title than he himself holds and the real owner of such land being in possession can not be dispossessed by such a grantee.

APPEAL FROM NELSON CIRCUIT COURT.

September 12, 1885.

OPINION BY JUDGE LEWIS:

In 1869 appellants, Samuel and George Ashlock, father and son, jointly purchased a tract of 132 acres of land at the price of $600 and received a deed therefor, in which a lien was retained to secure the payment of $400 balance unpaid of the purchase-money for which they had executed their notes.

October 23, 1882, a paper purporting to be a deed from Samuel Ashlock and wife, and George Ashlock and wife to appellee, Sayres, was executed and acknowledged by George Ashlock and wife only, by which, for the recited consideration of $600 cash paid, the entire tract of 132 acres was attempted to be conveyed.

January 13, 1883, Samuel Ashlock commenced this action against George Ashlock and appellee, Sayres, setting up claim to all the land and asking that his title be quieted.

In his petition he says that he paid the whole of the first install-ment of purchase-money and that George Ashlock being unable to pay any part of the notes given for the balance, he was compelled to pay the whole of that also, and thereupon, March 31, 1873, George Ashlock executed a deed conveying to him his undivided half of the land, whereby he, Samuel, became the sole owner and there-after held, used and claimed the entire tract as his own exclusively, and that appellee knowing George Ashlock had no interest in the land by fraud and misrepresentation procured the deed executed October 23, 1882.

George Ashlock admits the statements of the petition and making his answer a cross-petition against appellee, Sayres, charges the deed last mentioned was fraudulently procured from him, and was wholly without consideration. He asks that it be cancelled, but in case it be held valid, he prays judgment against appellee for $600, the recited consideration.

In his answer, appellee denies the alleged fraud, as well as notice of either the conveyance by George to Samuel in 1873, or that the latter held and claimed the entire tract as exclusively his own.

He states that both Samuel and George were, previous to Octo-ber, 1882, indebted to him and that it was agreed between him and them that they would convey the land to him at the price of $600, which was to be credited on their indebtedness to him, and that the deed was drawn in pursuance of that agreement, but executed by George Ashlock only.

Upon final hearing the court rendered a judgment in substance

36

that the plaintiff failed to establish that the deed from George Ashlock to Sayres was procured by fraud, or that the same should be set aside, but adjudged that the deed sought to be cancelled conveys no interest which Samuel Ashlock has in the land, and therefore ordered the petition and cross-petition dismissed.

The judgment does not clearly determine any of the issues involved in the action. For though it may be, the main issue was decided in favor of, the appellee, it is not in terms adjudged whether appellant, Samuel Ashlock, or appellee, Sayres, is the rightful owner of the undivided half interest in the land once owned by George Ashlock.

It seems to be conceded by all parties that a short time before October 23, 1882, there was an agreement between appellants and appellee to meet in Bardstown on that day for the purpose of completing a land trade. But they differ in their pleadings and testimony as to the quantity of land to be conveyed, the purpose and consideration of the conveyance and the parties to the deed.

Samuel and George Ashlock both testify that the agreement was that the latter was indebted to appellee about $75, and that Samuel Ashlock was to convey to him about 25 acres, called the Brown land, part of the 132-acre tract, at the price of $150, the balance of which, after satisfying the indebtedness of George to appellee, was to be paid to Samuel. And that with a view of carrying out the agreement, George and wife were to acknowledge the deed made by him in 1873 to Samuel Ashlock.

It appears that all the parties did meet at the time and place designated, and that the deed in contest was written by an attorney employed by appellee and was signed by George Ashlock in the law office and afterwards, on the same day, acknowledged by him and his wife. But Samuel Ashlock was not present when the deed was written, nor did he see it until after it had been acknowledged and lodged in the clerk's office. There is some evidence tending to show that he was in the law office at one time before the deed was written, but there is no evidence that he was there informed or understood that the deed was to be so written so as to convey the entire tract of 132 acres, or that any deed would be written or executed without his presence and knowledge. He testifies that his presence was required during the forenoon in the court house, and that when the court adjourned for dinner he met appellee at the court house door and there proposed to fix up the deed. in-

forming him that he would get George Ashlock and wife to acknowl-
edge the old deed made to him in 1873, when appellee told him
that George had already made a deed to him for the entire tract
and gone home, but when he expressed his surprise and disapproval
appellee said the deed was worth nothing.

In our opinion it is satisfactorily established that the agreement
actually made between the parties was that only the Brown tract
of 25 acres was to be conveyed, that the deed was not to be a joint
deed from Samuel and George Ashlock but made by the former
only and the consideration was $150 and not $100. This conclusion
is justified not only by the testimony of Samuel and George Ash-
lock but by a disinterested witness who was present when the
agreement was made, and if there was any doubt about the correct-
ness, it would be removed by a letter written by appellee to Samuel
Ashlock, November 4, 1882, less than one month after the transac-
tion in Bardstown. In that letter is the following: "I understand
from George that you will come up and make a deed to me for
the Brown place if I wish. Come on. I expected you at my house
the night of the day I saw you in Bardstown."

Both Samuel and George Ashlock testify that the former paid
the entire consideration for the 132 acres, and that George, in 1873,
executed to him a deed for his undivided half of the land. And
that deed, according to the certificate of the present clerk, though
not acknowledged and lodged for record until November 17, 1882,
was, in fact, as the parties on record agree, acknowledged at, its
date by George Ashlock before the clerk then in office, and an
official endorsement as to that effect then made on it.

It is further conclusively shown that from 1873 Samuel Ashlock
openly held and claimed the entire tract of 132 acres as exclusively
his own. And moreover, it is satisfactorily proved that appellee
was informed and knew previous to October 23, 1882, that Samuel
Ashlock so held and claimed the land, and that George Ashlock
neither had nor claimed any interest in it. He was well acquainted
with the condition of both appellants, had frequent business trans-
actions with them, and during a portion of the time George Ash-
lock was his own. tenant, while portions of the 132' acres were
leased by Samuel Ashlock to other tenants. .Besides, if not before,
he was, when the agreement was made between them, informed
that Samuel Ashlock claimed the entire tract and that George had
previously made him a deed therefor.

· Considering all the circumstances of this case in connection with the fact that neither Samuel nor George Ashlock can read or write, we are of the opinion the deed of October 23, 1882, was fraudulently procured by appellee from George Ashlock, who testifies that he did not understand it when read to him.

But independent of the question of fraud, Samuel Ashlock was entitled to the relief sought by him. For though the deed made to him in 1873 may not have been acknowledged until November, 1882, when it was lodged for record, and was not effectual to divest George Ashlock of the legal title to his undivided half of the 132 acres of land, it was good as a title bond, and consequently the deed to appellee did not operate to give him either a superior title or the right to dispossess Samuel Ashlock, already in possession, under his previous purchase.

In our opinion a judgment should have been rendered canceling the deed made by George Ashlock to appellee, and adjudging the legal title to the whole of the 132 acres and the rightful possession thereof in Samuel Ashlock. The judgment is reversed and cause remanded for further proceedings consistent with this opinion.

Judgment *reversed.*

*Wm. Johnson, for appellant.*

*J. C. Wickliffe, for appellee.*